Case number eight for argument this morning is United States v. Hernandez. Mr. Sample. Good morning, Your Honors, and may it please the Court, Brandon Sample on behalf of Monica Hernandez. There are principally two issues for the Court's consideration in this case. One is with respect to the three mail fraud convictions that Ms. Hernandez was convicted of. We argue that the Court should reverse those mail fraud convictions because the District Court determined that there had been no lulling in this case, but at the same time gave an instruction to the jury that the evidence potentially supported an avoiding detection theory. But under this Court's precedence, we argue that lulling and avoiding detection are actually one and the same. We also second argue that the District Court erred in failing to set a restitution payment schedule for while Ms. Hernandez was incarcerated in the Bureau of Prisons. This Court in United States v. O'Connor specifically described the lulling theory as actions that make detection or apprehension less unlikely. At issue in O'Connor was whether there were telephone calls that had been made by the defendant after fraudulently obtaining telephone equipment, whether those phone calls were intended to further the schemes by lulling his victims into not acting. This Court ultimately affirmed O'Connor's wire fraud convictions, noting that his actions were intended to lull his victims into a false sense of security, thus making apprehension less likely. The government has argued in their response brief that avoiding detection theory is proper under the McGowan decision. We believe that McGowan is, first off, actually not contrary to our argument that lulling and avoiding detection are one and the same. In fact, McGowan, when we look at it closely, it's also a telephone case similar to O'Connor where there were 18 calls that were made, and it refers to O'Connor. McGowan affirmed the convictions there, holding that the telephone calls were quote, designed by McGowan to lull Lamy, who was the victim in that case, into a false sense of security. So because lulling and avoiding detection under this Court's precedence are one and the same, the District Court found that there was no lulling in this case, and the parties actually agree with that. We believe that her convictions should be reversed on that basis. Turning to the restitution issue, the District Court was requested, both in writing and at the sentencing hearing, to establish a specific payment schedule for Ms. Hernandez while she was incarcerated. The judgment of the District Court, the written judgment, specifically says that unless the court has expressly ordered otherwise, payment of criminal monetary penalties is due during imprisonment. The judgment then goes on to say that those payments are to be made through the BOP's inmate financial responsibility program. Because the District Court's judgment did not expressly order nonpayment... Why didn't it expressly order? The District Court's schedule said that the amount was due upon the commencement of supervised release, which is after imprisonment. Isn't that specifically ordering otherwise? And during the colloquy of the oral sentence, the Court refused to set a schedule for within the Bureau of Prisons. It's our position, Your Honor, that that is in fact the problem, because we don't believe that saying that payment should commence while in supervised release addresses the specific direction of the judgment that says, unless it says specifically otherwise here, that payment is not to happen while in prison, then that means, by virtue, that that payment is to begin in prison. But when imposing the oral sentence and in the judgment of commitment order, the Court specifically said that the payments were not due until the commencement of supervised release, which means they weren't due when she was incarcerated. Right. So how do you get around that being an order from the Court expressly otherwise? Because of the other language we believe in the judgment, and that alludes to the fact that the payments would begin once you're in Bureau of Prisons custody. What in the judgment suggests that they would be made once she was incarcerated? In light of the language that I just pointed out. Other than the general language in the judgment about making payments unless expressly otherwise ordered, there is nothing specific in the judgment that speaks to that, your specific question, Your Honor. And orally at sentencing, the Court specifically refused to say that they were due during incarceration. How do you get around that? Even if there were something inconsistent in the JNC, the oral pronouncement of sentence is what controls. It is, Your Honor. It is. My understanding is that the Bureau of Prisons, when they receive these judgments and they see that pro forma language that's in the judgment, that when there's an absent payment schedule, that they take it upon themselves to establish a payment schedule in those If the Court does not have any further questions, I'll reserve the balance of my time. Thank you, Counsel. Ms. Kramer. May it please the Court, Michelle Kramer on behalf of the United States. The properly instructed jury found that the mailing of membership packets further the scheme to defraud. And this finding was amply supported by the evidence. These membership packets included copies of the signed membership agreements, which were the very agreements between these victims and the fake trust. These agreements embodied the fraudulent scheme here. They discussed payments and they laid out what this promise to do for the victims. The packets also contained receipts and other balance invoices. These laid out the total amount owed by the victim, the payments that the victims already made, and the balance owed by the victims. These receipts not only memorialized the payments, but they also facilitated future payments by the victims. This was the very goal of this fraudulent scheme. The membership packets also included refund policies, which informed members that in the event that Washington National Trust would not acquire or reduce the members debt, they would get their money back. The refund policies also laid out for the members that this process would take between 90 and 50 years. These refund policies allowed the defendant and her counterparts to continue to deceive members into thinking that this trust was legitimate. They also facilitated future payments because they gave members the impression that if the trust didn't work, they were going to get their money back. Now the defendant has suggested that the district court's rejecting of a scheme is insufficient, and that's simply incorrect. Lulling and avoiding detection are separate theories, and under McGowan, which does cite to O'Connor, the theories are treated separately as alternatives. Lulling victims into a false sense of security is most often applied or utilized in cases where the money has been obtained and defendants have continued to take action to make victims feel that sense of security. That's not the case here. What we have here are mailings that were part and parcel of the execution and the continuance of this scheme, as well as assisting in prolonging detection of the scheme. The jury was properly instructed on the elements of mail fraud and properly instructed that mailings can be in furtherance of a scheme to defraud when they assist in avoiding detection. Just briefly on the second issue, the district court did properly omit a restitution payment schedule during the defendant's term of imprisonment, and as Your Honor noted, there is express language in the judgment that unless expressly ordered otherwise, the payments must be made during a term of imprisonment, but the order does expressly state otherwise. It is clear that the defendant must make a lump sum payment, and the balance is due upon commencement of supervised release, in other words, at the end of her term of imprisonment, the boxes that would have allowed for installment payments while the defendant was imprisoned. Unless there are any questions, I ask that the court affirm the defendant's conviction and the district court's judgment in this case. Thank you very much, Counsel. Anything further, Mr. Semple? Very briefly, Your Honor. Just returning to the central point about avoiding detection and lulling being one and the same, I would direct the court to the district court's disposition on the motion for a directed verdict at the conclusion, where the district court found that a reasonable jury could find that the success of the scheme depended on W&T continuing a good relationship with its members and avoiding detection for as long as possible, and we believe that really the district court was speaking of the same thing when it was talking about lulling and avoiding detection as being one and the same, but at the same time recognizing that the government had not met its burden under the so-called lulling theory. And on that basis, we would urge the court to reverse Ms. Hernandez's convictions.